DYK, Circuit Judge.
ePlus, Inc. (“ePlus”), the assignee of U.S. Patent Nos. 6,023,683 (the “'683 patent”) and 6,505,172 (the “'172 patent”), sued Lawson Software, Inc. (“Lawson”) for infringement. The district court found two of the asserted system claims and three of the asserted method claims not invalid, and a jury found that Lawson infringed those claims. In an earlier appeal, we reversed in part on the ground that the system claims were invalid and that two of the asserted method claims were not infringed. We affirmed only the infringement verdict as to one method claim— claim 26 — of the '683 patent. We remanded to the district court to make necessary modifications to the injunction.
On remand, the district court modified the injunction in one respect and found Lawson in civil contempt for violating the injunction. Lawson appealed both the injunction and contempt order. During the pendency of Lawson’s appeals, the United States Patent and Trademark Office (“PTO”) completed a reexamination of the '683 patent and determined that claim 26 was invalid. In a separate appeal, we affirmed the PTO’s invalidity determination, and the PTO cancelled claim 26. We now vacate the injunction and contempt order because both were based on claim 26, which the PTO has now cancelled.
Background
This case raises two issues. The first is whether an injunction can continue after the PTO has cancelled the only claim on which the injunction was based. The second is whether civil contempt remedies based on the violation of an injunction are appropriate when the injunction has been overturned on direct appeal.
I
ePlus owns the '172 patent and the '683 patent, which both relate to methods and systems for electronic sourcing. See ePlus, Inc. v. Lawson Software, Inc., 700 F.3d 509, 512 (Fed.Cir.2012) (“ePlus I”). The claimed methods and systems are directed to using electronic databases to search for product information and ordering selected products from third-party vendors. The only claim now at issue in this appeal, claim 26 of the '683 patent, recites a “method comprising the steps of’: “maintaining at least two product catalogs on a database,” “selecting product catalogs to search,” “searching for matching items,” “building a requisition,” “processing the requisition to generate one or more purchase orders,” and “determining whether a selected matching item is available in in *1352 ventory.” '683 patent col. 26 1. 61-col. 271. 7.
In 2009, ePlus sued Lawson for infringement of the '683 patent and the '172 patent in the Eastern District of Virginia.[1] Lawson sells computer software to institutional customers. Its products are modular — customers decide which individual software components to purchase based on their needs. As a result, different customers use different combinations, or configurations, of software modules. The different configurations generally let users search for, select, and order products electronically, but the nature and extent of those capabilities vary depending on the particular modules a customer selects. When ePlus sued Lawson, the basic software component (“Core Procurement”) allowed users to load products into an internal database (“Item Master”), search that database for products, create a requisition listing multiple selected products, and generate individual purchase orders to transmit to vendors. Requisition Self-Service (“RSS”) was a module that provided a user interface for the Core Procurement unit. The Procurement Punchout module (“Punchout”) let users search third-party vendors’ databases for products and put those vendors’ products on requisitions along with products stored in the internal Item Master database.
Given the modular nature of Lawson’s products, ePlus asserted different patent claims against five distinct configurations of software modules (“Configurations 1-5”). With respect to the asserted claims of the '683 patent and the '172 patent, the jury found that three of the five accused configurations infringed. Configurations 3 and 5 were found to infringe two system claims (claim 1 of the '172 patent and claim 3 of the '683 patent) and three method claims (claims 26, 28, and 29 of the '683 patent). Configuration 2 was found to infringe one system claim (claim 1 of the '172 patent). Configurations 1 and 4 were found not to infringe any of the claims asserted against them.
Pursuant to the jury verdicts, the district court permanently enjoined Lawson from
directly or indirectly making, using, offering to sell, or selling within the United States or importing into the United States any of the [adjudged infringing] product configurations and/or installation, implementation, design, configuration, consulting, upgrade, maintenance, and support and training and other related and associated services and any colorable variations thereof (the “Infringing Products and Services”).
J.A. 4263.' The court defined the “Infringing Products and Services” to include the three software configurations (Configurations 2, 3, and 5) adjudged infringing by the jury. The court also enjoined Lawson from “[c]irculating, publishing or disseminating within the United States any literature or information that encourages the use, sale or importation of any of the Infringing Products and Services,” and from “[ajiding and abetting, actively inducing, or in any way contributing to the making, use, sale or importation of any of the Infringing Products and Services.” J.A. 4264. Lawson appealed.
On this first appeal, we determined that the two asserted system claims (claim 1 of the '172 patent and claim 3 of the '683 patent) were invalid, and that two of the three asserted method claims (claims 28 and 29 of the '683 patent) were not infringed. We affirmed only the infringement finding as to method claim 26. Only Con *1353 figurations 3 and 5 were found to infringe that claim. As a result of our holding on appeal, Configuration 2 was no longer infringing. We remanded “for the district court to consider what changes are required to the terms of the injunction, consistent with this opinion.” ePlus /, 700 F.3d at 523.
After our ruling, the district court ordered the parties to file statements of position on the effect of our decision on the injunction. These were filed before Lawson’s Rule 60(b) motion discussed below. Most importantly, Lawson challenged the very provisions of the injunction that led to the contempt sanctions sought by ePlus— namely, the bar against sales of particular software products. Originally, these provisions concerning software sales were supported by the jury’s findings of infringement of the system claims (claim 1 of the '172 patent and claim 3 of the '683 patent).[2] After our decision vacated those findings, Lawson argued that infringement of a single method claim (claim 26 of the '683 patent) could not support the injunction against product sales (and hence, contempt sanctions based on such sales) and that our opinion distinguished “sales” of software from “installation” and other services provided to customers.[3] This court upheld the finding of induced infringement of claim 26 not based on sales, but based on Lawson’s providing customer services, including software installation, demonstrations, and maintenance.[4] Lawson also urged that, in light of this court’s narrowing of the jury’s infringement findings, the enjoined software products were capable of significant non-infringing uses and sales of such software should not be enjoined. Additionally, Lawson argued that under eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006), the balancing of equities no longer supported any injunction. ePlus argued that the only modification required was the removal of Configuration 2 from the list of enjoined products. Lawson thereafter filed a Rule 60(b) motion to modify the injunction.
The district court agreed with ePlus’s position and ordered that the injunction be “modified by deleting from its scope the product ... colloquially known as ‘Configuration 2,’” and “remain in effect in all other respects.” J.A. 1.
On remand, in addition to reconsidering the injunction, the district court also instituted contempt proceedings. Following the jury verdicts, Lawson had decommissioned .and stopped selling products with RSS, the user interface module for Core Procurement, the basic building block of Lawson’s system. Lawson had also redesigned its software in two pertinent respects. First, it redesigned Configurations 3 and 5 by developing a new module, Requisition Center' (“RQC”) to replace the *1354 RSS user interface module. As redesigned, RQC prevented a user from simultaneously putting items from both the internal Item Master database and a third-party vendor’s database (accessible via Punchout) on the same requisition. Second, Lawson redesigned Configurations 3 and 5 by developing downloadable software (“Patch 1”) that limited the functionality of Punchout in Configurations 3 and 5. As modified by Patch 1, those configurations no longer allowed users to put items from multiple third-party vendors on the same requisition when using Punchout. As a result, users could only build requisitions with products from the internal Item Master database or from a single third-party database.
ePlus alleged that Lawson was in contempt for violating the injunction with respect to the redesigned software, arguing that the changes did not make the software more than colorably different from Configurations 3 and 5, and that the redesigned software infringed claim 26. Lawson argued that it was not violating the injunction because the redesigned software was more than colorably different from the originally accused software and that ePlus could not show that the redesigned software continued to infringe claim 26. The court held Lawson in contempt for violating the injunction, finding that the redesigned products were no more than color-ably different and infringed. The court ordered Lawson to pay a compensatory fine of $18,167,950 and coercive daily fines of $62,362 until it could show compliance with the injunction. It declined to award enhanced damages or attorneys’ fees. Lawson appealed the district court’s modified injunction and contempt order. We stayed the accumulation of fines during the pendency of the appeals.
While Lawson’s appeals were pending, in another case, we affirmed the PTO’s reexamination decision invalidating claim 26 of the '683 patent. In re ePlus, Inc., 540 Fed.Appx. 998 (Fed.Cir.2013) (per cu-riam). Our mandate issued, and the PTO cancelled claim 26 in April 2014.
We have jurisdiction over the appeal of the injunction pursuant to 28 U.S.C. § 1292(a)(1) & (c)(1) and over the appeal of the contempt order pursuant to 28 U.S.C § 1291. We review a grant, denial, or modification of an injunction in a patent case for abuse of discretion. Int’l Rectifier Corp. v. Samsung Elecs. Co., 361 F.3d 1355, 1359 (Fed.Cir.2004) (citing Carborundum Co. v. Molten Metal Equip. Innovations, Inc., 72 F.3d 872, 881 (Fed.Cir.1995)). We review a contempt order based on an injunction against infringement for abuse of discretion. Merial Ltd. v. Cipla Ltd., 681 F.3d 1283, 1292 (Fed.Cir.2012) (citing Fujifilm Corp. v. Benun, 605 F.3d 1366, 1370 (Fed.Cir.2010)).
DiscussioN
I. Injunction
The first question is whether the district court’s modified injunction against Lawson must be set aside now that the PTO has cancelled the patent claim on which it is based. It is well established that an injunction must be set aside when the legal basis for it has ceased to exist. In Pennsylvania v. Wheeling & Belmont Bridge Co., 54 U.S. (13 How.) 518, 577-79, 14 L.Ed. 249 (1851), the Supreme Court approved an injunction sought by the state of Pennsylvania, ordering the removal of a bridge across the Ohio River because it illegally obstructed navigation. Congress subsequently enacted a law authorizing the bridge. Pennsylvania v. Wheeling & Belmont Bridge Co., 59 U.S. (18 How.) 421, 422, 15 L.Ed. 435 (1855) (“Wheeling Bridge ”). Pennsylvania requested that the Court execute its decree ordering the abatement of the bridge and punish the defendants for contempt for violating the Court’s order by failing to remove the *1355 bridge. Id. at 427. The Court denied the motions and instead dissolved the injunction because “there [wa]s no longer any interference with the enjoyment of the public right inconsistent with law.” Id. at 432. The Court held that an injunction “is executory, a continuing decree.... If, in the mean[ ]time, since the decree, this right has been modified by the competent authority ... it is quite plain the decree of the court cannot be enforced.” Id. at 431-32. Because the bridge was no longer unlawful, the Court had to set aside the previous order rather than enforce it.
“The principles of the Wheeling Bridge case have repeatedly been followed” by the Supreme Court as well as “by lower federal and state courts.” Sys. Fed’n No. 91, Ry. Emps.’ Dep’t v. Wright, 364 U.S. 642, 650-52, 81 S.Ct. 368, 5 L.Ed.2d 349 (1961) (holding that it is an abuse of discretion not to modify an injunction when, because of a change in the law, “[t]he parties have no power to require of the court continuing enforcement of rights the statute no longer gives”); see also, e.g., Cobell v. Norton, 392 F.3d 461, 467 (D.C.Cir.2004) (vacating injunction where subsequently enacted legislation relieved executive department of duties required by injunction because “an injunction may be a final judgment for purposes of appeal, [but] it is not the last word of the judicial department because any provision of prospective relief is subject to the continuing supervisory jurisdiction of the court, and therefore may be altered according to subsequent changes in the law” (quoting Nat’l Coal. to Save Our Mall v. Norton, 269 F.3d 1092, 1096-97 (D.C.Cir.2001) (internal quotation marks omitted in original) (quoting Miller v. French, 530 U.S. 327, 347, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000)))); Biodiversity Assocs. v. Cables, 357 F.3d 1152, 1169-70 (10th Cir.2004) (injunction arising from settlement agreement “must give way” because it was inconsistent with new legislation); Imprisoned Citizens Union v. Ridge, 169 F.3d 178, 184 (3d Cir.1999) (“Wheeling Bridge therefore stands for the proposition that when Congress changes the law underlying a judgment awarding prospective injunctive relief, the judgment becomes void to the extent that it is inconsistent with the amended law.”).
Those principles reflect the fact that “[a] continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need.... [A] court does not abdicate its power to revoke or modify its mandate, if satisfied that what it has been doing has been turned through changing circumstances into an instrument of wrong.” United States v. Swift & Co., 286 U.S. 106, 114-15, 52 S.Ct. 460, 76 L.Ed. 999 (1932); see also Salazar v. Buono, 559 U.S. 700, 718, 130 S.Ct. 1803, 176 L.Ed.2d 634 (2010) (“Where legislative action has undermined the basis upon which relief has previously been granted, a court must consider whether the original finding of wrongdoing continues to justify the court’s intervention.” (citing Wright, 364 U.S. at 648-49, 81 S.Ct. 368 and Wheeling Bridge, 59 U.S. at 430-32)).
Our court has applied these principles to an injunction barring infringement of patents later found to be invalid. Mendenhall v. Barber-Greene Co., 26 F.3d 1573, 1584 (Fed.Cir.1994). In Mendenhall, we reviewed injunctions based on findings of patent infringement. Id. at 1576. While those injunctions were pending on appeal, the same patents were held invalid in another case in our court. Id. at 1576-77. We held that the injunctions had to be reversed following the final judgment of patent invalidity. Id. at 1584. We recognized that upholding injunctions would be “anomalous in the extreme in connection with patents this court has just held invalid.” Id. at 1578.
Under these authorities, there is no longer any legal basis to enjoin Lawson’s *1356 conduct based on rights that claim 26 of the '683 patent previously conferred as those rights have ceased to exist. The PTO found claim 26 invalid, we affirmed that decision, our mandate issued, and the PTO cancelled the claim. Claim 26 no longer confers any rights that support an. injunction against infringement. During oral argument, ePlus even admitted that there could be no injunction moving forward. The PTO’s cancellation of claim 26 requires that we now vacate the injunction.
II. Civil Contempt Remedies
The second question is whether the civil contempt sanctions should be set aside. It is well established that “[vjiola-tions of an order are punishable as criminal contempt even though the order is set aside on appeal ... or though the basic action has become moot.” United States v. United Mine Workers of Am., 330 U.S. 258, 294 & n. 60, 67 S.Ct. 677, 91 L.Ed. 884 (1947) (citing Worden v. Searls, 121 U.S. 14, 7 S.Ct. 814, 30 L.Ed. 853 (1887); Gompers v. Buck’s Stove & Range Co., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911)); see also Walker v. Birmingham, 388 U.S. 307, 319, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967) (upholding criminal contempt sentences for violation of injunction regardless of the validity of the injunction); Howat v. Kansas, 258 U.S. 181, 189-90, 42 S.Ct. 277, 66 L.Ed. 550 (1922) (criminal contempt sentences do not depend on constitutionality of law on which injunction is based). If Lawson had been found guilty of criminal contempt, that order and any resulting penalties would not be set aside simply because claim 26 had been cancelled.
However, the district court found Lawson in civil, not criminal, contempt. It awarded “compensation” to ePlus for economic injury during the period that the injunction was in effect, based on the Supreme Court decision in Leman v. Krentler-Arnold Hinge Last Co., 284 U.S. 448, 52 S.Ct. 238, 76 L.Ed. 389 (1932). In Leman, the Court upheld an award of the infringer’s profits “not by way of punishment but to insure full compensation.” Id. at 456, 52 S.Ct. 238.[5] The rule for civil contempt for violating a provision of an injunction that is not final, i.e., that is still subject to litigation over the propriety of its issuance, is that “[t]he right to remedial relief falls with an injunction which events prove was erroneously issued.” United Mine Workers, 330 U.S. at 295, 67 S.Ct. 677 (citing Worden, 121 U.S. at 25-26, 7 S.Ct. 814; Salvage Process Corp. v. Acme Tank Cleaning Process Corp., 86 F.2d 727, 727 (2d Cir.1936); S. Anargyros v. Anargyros & Co., 191 F. 208 (C.C.N.D.Cal.1911)). The Supreme Court distinguished civil from criminal contempt, explaining that:
It does not follow, of course, that simply because a defendant may be punished for criminal contempt for disobedience of an order later set aside on appeal, that the plaintiff in the action may profit by way of a fine imposed in a simultaneous proceeding for civil contempt based upon a violation of the same order.
Id. at 294-95, 67 S.Ct. 677. The Court explained that if the non-final injunction at issue (a temporary restraining order) had been overturned, “the conviction for civil contempt would be reversed in its entirety.” Id. at 295, 67 S.Ct. 677. “[A party’s] right, as a civil litigant, to the [civil] compensatory fine is dependent upon the outcome of the basic controversy.” Id. at 304, 67 S.Ct. 677. Civil contempt sanctions must be set aside when the resolution of *1357 the case requires overturning the injunction on which those sanctions are based.
The Supreme Court has specifically applied this rule to set aside civil contempt sanctions imposed for violating an injunction based on patents found to be invalid on appeal of the (non-final) injunction. Worden, 121 U.S at 26, 7 S.Ct. 814.[6] In Worden, the district court had declared the patent not invalid, found the defendants liable for infringement, and ordered a permanent injunction. Id. at 19, 7 S.Ct. 814. The court also found the defendants in contempt of its preliminary injunction and ordered them to pay fines for civil contempt. Id. at 20, 7 S.Ct. 814. The defendants appealed the court’s rulings on infringement and validity, as well as the contempt order and resulting fines. Id. at 20, 24, 7 S.Ct. 814. On appeal, the Supreme Court found the patent invalid and, on that basis, vacated the injunction. Id. at 25, 7 S.Ct. 814. Beeause the Court found the patent invalid, id. at 24, 7 S.Ct. 814, and reversed the injunction on appeal, id. at 26, 7 S.Ct. 814, it set aside the civil contempt order and resulting fines, declaring that the sanctions “cannot be upheld.” Id. The Court explained that the civil sanctions were “incidents of [the patentee’s] claims in the suit. His right to them was, if it existed at all, founded on his right to the injunction, and that was founded on the validity of his patent.” Id. at 25, 7 S.Ct. 814. Under Worden, compensatory civil contempt remedies for violating a provision of an injunction that is still subject to litigation over its issuance must be set aside when the injunction is reversed because the patent is determined to be invalid.[7] Other circuits have similarly held that civil contempt sanctions must be set aside if the underlying non-final injunction is reversed on appeal.[8]
*1358 This case is not distinguishable on the ground that the basis for the injunction has been removed as the result of the PTO proceeding rather than a court judgment. In Fresenius USA, Inc. v. Baxter International, Inc., we held that a non-final money judgment of damages for infringement must be set aside where the judgment rested on a patent claim that the PTO later cancelled. 721 F.3d 1330, 1344, 1347 (Fed.Cir.2013).[9] We held that the cancellation of a patent requires that non-final judgments be set aside because the “can-celled claims [a]re void ab initio,” id. at 1346, relying on Moffitt v. Garr, 66 U.S. 273, 283, 1 Black 273, 17 L.Ed. 207 (1861), where the Supreme Court held that “unless [the patent] exists, and is in force at the time of trial and judgment, the suits fail.” Id. at 1345 (quoting Mojfitt, 66 U.S. at 283). Thus, the cancellation of the patent precluded the patentee from recovering damages in Fresenius. Similarly, here the civil contempt sanctions must be set aside.
This case does not require us to decide whether civil contempt sanctions would survive if the injunction had been final at the time the district court imposed civil contempt sanctions.[10] The injunction here was not final even though claim 26 had been held infringed. We go no further than we did in Fresenius in deciding this case.
We held in Fresenius that even if this court has rejected an invalidity defense to infringement, an “intervening decision invalidating the patents unquestionably applies” as long as “the judgment in [the present] litigation is not final.” Id. at 1344; see also Mojfitt, 66 U.S. at 283 (“[P]ending suits fall with the surrender” of a patent “which, in judgment of law, extinguishes the patent.”); Mendenhall, 26 F.3d at 1584 (“Because the Mendenhall patents are invalid, the plaintiffs cannot now enjoin or recover damages from these defendants.”). In Fresenius, we had previously reviewed the district court’s rulings on infringement and invalidity and remanded the ease to the district court to determine the scope of damages and in-junctive relief. 721 F.3d at 1333. When reviewing the judgment reached by the district court on remand, we held that the original district court judgment, while “final for purposes of appeal ... was not sufficiently final to preclude application of the intervening judgment” that led to the cancellation of the patent. Id. at 1340. With respect to the determination of finality, we explained that “where the scope of relief remains to be determined, there is no final judgment binding the parties (or the court).” Id. at 1341. We relied on the Supreme Court’s holding that “a final decree [is] one that finally adjudicates upon the entire merits, leaving nothing further to be done except the execution of it.” John Simmons Co. v. Grier Bros. Co., 258 U.S. 82, 88, 42 S.Ct. 196, 66 L.Ed. 475 (1922).
*1359 At the time of the original injunction here, the jury had found two system claims and three method claims infringed. The injunction did not tie specific enjoined activities or products to specific claims that had been found infringed. Indeed, it did not even mention any of the five claims that were found to be infringed. On its face, our invalidation of the two system claims and our holding that method claims 28 and 29 were not infringed, see ePlus I, 700 F.3d at 520-22, resulted in a substantial question as to the appropriate scope of the injunction. The question was whether the one method claim we sustained (claim 26) was sufficient to support the district court’s broad injunction. We remanded for the district court to “consider what changes are required to the terms of the injunction, consistent with this opinion.” Id. at 523. Although the parties agreed that configuration 2, which the jury had found infringed one system claim, was to be removed from the injunction, a central issue on remand was whether the injunction as to sales and manufacturing could still be upheld on the basis of infringement of method claim 26.
The injunction enjoined “making, ... offering to sell, or selling” the “Infringing [software] Products_” J.A. 4263-64. But it did not tie the sales provision to any particular claims, nor, contrary to the dissent, did the district court’s opinions do so.[11] There was no question as to the propriety of the sales and manufacturing injunction so long as the system claims were infringed. An injunction can of course be granted against the making and selling of a product that directly infringes on a system claim. See, e.g., NTP, Inc. v. Research in Motion, Ltd., 418 F.3d 1282, 1315 (Fed.Cir.2005) (noting that using, offering to sell or selling a patented system can be direct infringement of a system claim under 35 U.S.C. § 271(a)); Broadcom Corp. v. Emulex Corp., 732 F.3d 1325, 1338 (Fed.Cir.2013) (sustaining injunction against sales where a system claim was infringed).
But the system claims were held invalid. ePlus has argued that the sales and manufacturing provisions of the injunction could be based on induced infringement by Lawson of method claim 26, the one claim of the patent that we held infringed in the original appeal. On remand, and again on *1360 appeal here, Lawson argued that the'injunction had to be modified because it could not, after the invalidation of the two system claims, “prohibit!] Lawson from making and selling its ... systems” because the original injunction barred sales “even though Lawson’s mere sale and distribution of its systems does not infringe the method of [cjlaim 26.” Lawson’s Statement of Position Respecting the Effect of the Federal Circuit’s Decision on the Scope of the Original Injunction at 17-18, No. 3:09cv620 (E.D. Va. Dec. 27, 2012), ECF No. 990 (emphases in original). We agree with Lawson that the original appeal did not resolve the question of whether claim 26 could support the sales injunction.
Once the system claims were invalidated, there remained a substantial question of whether an injunction against sales and manufacturing could be justified on a theory of inducement.[12] The core functionality of Lawson’s systems (which ePlus itself characterizes as the “core” functionality) allowed a purchaser to search an internal database and order items. But that functionality did not infringe claim 26. Only using the so-called “Punchout” feature that allowed customers to also order from third-party databases was held to be infringing.
As the Supreme Court explained in the analogous context of copyright infringement, to “overcome! ] the law’s reluctance to find liability when a defendant merely sells a commercial product suitable for some lawful use,” induced infringement requires active steps to encourage direct infringement and an “affirmative intent that the product be used to infringe.” Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 936, 125 S.Ct. 2764, 162 L.Ed.2d 781 (2005) (citing Water Techs. Corp. v. Calco, Ltd., 850 F.2d 660, 668 (Fed.Cir.1988)). A seller does not induce infringement of a method claim by merely selling an apparatus capable of performing the method. See Dynacore Holdings Corp. v. U.S. Philips Corp., 363 F.3d 1263, 1276 n. 6 (Fed.Cir.2004) (“[S]ale of a lawful product by lawful means, with the knowledge that an unaffiliated, third party may infringe, cannot, in and of itself, constitute inducement of infringement.” (citation, internal quotation marks omitted)); Joy Techs., Inc. v. Flakt, Inc., 6 F.3d 770, 773 (Fed.Cir.1993) (“The law is unequivocal that the sale of equipment to perform a process is not a sale of the process within the meaning of section 271(a).”). Inducement requires such steps as “encouraging],” Grokster, 545 U.S. at 936, 125 S.Ct. 2764, “recommending],” Toshiba Corp. v. Imation Corp., 681 F.3d 1358, 1365 (Fed.Cir.2012), or “promoting],” Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings, 370 F.3d 1354, 1365 (Fed.Cir.2004), an infringing use. Further, the Fifth Circuit explicitly held in Rohm & Haas Co. v. Dawson Chemical Co., 599 F.2d 685 (5th Cir.1979), aff'd, 448 U.S. 176, 100 S.Ct. 2601, 65 L.Ed.2d 696 (1980), “mere sale is not wrongful under [271(b) ]” where a method claim had been *1361 infringed, so appropriate relief would “not be an injunction forbidding [sales].” Id. at 703 n. 24.
Not surprisingly, our opinion in ePlus I did not resolve whether the sales and manufacturing injunction could be based on method claim 26. With respect to claim 26, we stated that Lawson’s customers infringe by performing all the steps of claim 26, that Lawson directly infringes claim 26, and that Lawson induced infringement. But we did not hold that sales induced infringement.[13] There was no argument by either party in the original appeal as to the consequences of invalidating the system claims, so this court’s statement that “[t]o the extent that we have not addressed any of the parties’ arguments ..., we have determined them to be unpersuasive,” ePlus I, 700 F.3d at 523 n. 2, cannot have been directed to that issue.
Thus, because the propriety of the injunction against sales and manufacturing was still an issue after the first appeal, there had not been “a final decree ... that finally adjudicates upon the entire merits, leaving nothing further to be done except the execution of it.” John Simmons Co., 258 U.S. at 88, 42 S.Ct. 196. And the “scope of relief re-main[ed] to be determined .... ” Fresenius, 721 F.3d at 1341. The injunction was not final and under Worden, the cancellation of the claim by the PTO required that the injunction and contempt sanctions be vacated.
ePlus asserts that Lawson viewed the injunction as final because it filed a Rule 60(b) motion asking the district court to modify or dissolve the modified injunction. The filing of a Rule 60(b) motion under such circumstances is not unusual. Filing a Rule 60(b) motion did not prevent Lawson from appealing the modified injunction in addition to appealing the denial of the Rule 60(b) motion. See Stone v. Immigration & Naturalization Serv., 514 U.S. 386, 401, 115 S.Ct. 1537, 131 L.Ed.2d 465 (1995) (“Either before or after filing his appeal, the litigant may also file a Rule 60(b) motion for relief with the district court. The denial of the [Rule 60(b) ] motion is appealable as a separate final order, and if the original appeal is still pending ... the court of appeals can consolidate the proceedings.”).
We conclude that the compensatory award for the violation of the injunction must be set aside in light of the cancellation of claim 26. Given our disposition, we need not reach the question of whether Lawson’s redesigned products are more than colorably different from the original accused products and whether the redesigned products infringe.
*1362 Conolusion
For the foregoing reasons, the district court’s injunction and contempt orders are vacated. The case is remanded with instructions to dismiss.
VACATED AND REMANDED.

. ePlus also alleged infringement of certain claims of U.S. Patent No. 6,055,516. The jury found none of those claims infringed, and ePlus did not appeal that aspect of the jury verdict.

.In sustaining the jury verdict, the district court relied on the determination that "Lawson actively induces its customers’ direct infringement by selling and offering to sell the infringing systems with the intent that its customers use those systems in an infringing manner.” ePlus, Inc. v. Lawson Software, Inc., No. 3:09-cv-620, 2011 WL 3584313, at *4 (E.D.Va., Aug. 12, 2011). We did not sustain the finding of infringement of the system claims or the findings of direct and induced infringement based on the sales of the systems.

. We recognized that "[i]n addition to selling procurement software, Lawson provides services to customers who purchase its products. These services may include installation and maintenance of the products.” ePlus I, 700 F.3d at 514.

. We relied on "evidence that Lawson installed, maintained, demonstrated and managed the infringing systems for its customers” to conclude that a reasonable jury could "infer that Lawson performed the steps of claim 26” and "induced its customers to infringe claim 26.” Id.

. The district court also ordered coercive sanctions. We stayed these sanctions pending the resolution of this appeal. There is no question that ePlus is not entitled to seek coercive sanctions now that the injunction has been vacated.

. Curiously, the dissent now finds Worden inapplicable to this situation, Diss. Op. at 1368 n. 5, after previously urging in Fresenius that Worden required the reversal of contempt sanctions in such situations. Judge O’Malley, in dissenting from the denial of en banc rehearing in Fresenius, stated: “[Worden] merely stands for the proposition that the right to fines for violation of a preliminary injunction is founded on that injunction which in turn is predicated on the validity of the patent.” Fresenius USA, Inc. v. Baxter Int’l, Inc., 733 F.3d 1369, 1376 n. 5 (Fed.Cir.2013) (dissenting from the denial of the petition for rehearing en banc) (citing Worden, 121 U.S. at 25, 7 S.Ct. 814).

. ePlus claims that some cases it cites have reached contrary results, but those cases involve situations where the basis for the injunction was eliminated prospectively only, see, e.g., Klett v. Pim, 965 F.2d 587, 590 (8th Cir.1992) (passage of Agricultural Credit Act made injunction moot, not baseless); Coleman v. Espy, 986 F.2d 1184, 1190 (8th Cir.1993) (citing Klett, 965 F.2d at 590) (same), or penalties that were not determined to be civil, see, e.g., Cassidy v. Puett Elec. Starting Gate Corp., 182 F.2d 604, 608 (4th Cir.1950) (district court ordered penalties "to punish those who have 'deliberately and without any reasonable excuse disobeyed [its] orders” (internal quotation marks omitted)).

."The general rule is that whether a contempt judgment survives the avoidance of an underlying order depends on the nature of the contempt decree. If the contempt is criminal it stands; if it is civil it falls.” Latrobe Steel Co. v. United Steelworkers of Am., 545 F.2d 1336, 1342, 1347-48 (3d Cir.1976) (vacating coercive civil contempt order because "reversal of the underlying injunction indicates that the complainant never had a valid right which was enforceable against the defendant”); see also e.g., McLean v. Cent. States, S. & S. Areas Pension Fund, 762 F.2d 1204, 1210 (4th Cir.1985) (ordering "reversal of the contempt order because [the appellant] has prevailed in overturning the [underlying] order on appeal.”); Scott & Fetzer Co. v. Dile, 643 F.2d 670, 675 (9th Cir.1981) (remedial civil contempt judgment “must fall as a result of our decision invalidating the underlying injunction”); ITT Comm. Dev. Corp. v. Barton, 569 F.2d 1351, 1361 (5th Cir.1978) (vacating contempt orders because the underlying turnover order "was invalid ab initio”); Blaylock v. Cheker Oil Co., 547 F.2d 962, 966 (6th Cir.1976) (concluding that "the remedial con *1358 tempt order ... falls with [the relevant provision] of the injunction”). All of these cases involved orders whose merits were still subject to review when the civil contempt sanctions were reviewed.

. The Supreme Court denied the petition for certiorari on May 19, 2014. Baxter, Int'l, Inc. v. Fresenius USA, Inc., - U.S. -, 134 S.Ct. 2295, 189 L.Ed.2d 174 (2014).

. See, e.g., Maggio v. Zeitz, 333 U.S. 56, 68, 68 S.Ct. 401, 92 L.Ed. 476 (1948) (reviewing contempt order, but not underlying order requiring turnover of property because "the turnover proceeding is a separate one, and when completed and terminated in a final order, it becomes res judicata and not subject to collateral attack in the contempt proceedings”); Proveris Scientific Corp. v. Innovasystems, Inc., 739 F.3d 1367, 1370, 1374 (Fed.Cir.2014) (holding defendant cannot raise invalidity as a defense to contempt when the underlying injunction is final and not on appeal).

. The dissent quotes from the district court’s opinion denying judgment as a matter of law to argue that selling the infringing systems would be an infringement of method claim 26 specifically. Diss. Op. at 1363 n. 2 (quoting ePlus, Inc. v. Lawson Software, Inc., 2011 WL 3584313, at *4 (E.D.Va. Aug. 12, 2011)). The context of the quoted sentence shows instead that the district court was referring to the infringed claims collectively:
The jury heard and received substantial evidence to support a finding of indirect infringement of the claims, on either an inducement or contributory infringement basis. Evidence demonstrated that Lawson actively induces its customers' direct infringement by selling and offering to sell the infringing systems with the intent that its customers use those systems in an infringing manner. Testimony elicited during the trial and the documentary evidence tended to prove also that Lawson installs the infringing systems on its customers' systems, configures and implements the systems, provides_ a wide-range of technical support and service, and provides instructions and training to its customers on how to use the systems in an infringing manner.
ePlus, 2011 WL 3584313, at *4. This passage, like the district court's injunction opinion, see ePlus, Inc. v. Lawson Software, Inc., 2011 WL 2119410 (E.D.Va. May 23, 2011), is not clear on the precise scope of Lawson’s indirect infringing activity with respect to each individual claim. Given that only method claim 26 survived the ePlus I appeal, with the system claims held invalid and other method claims found non-infringed, there was a substantial question as to which activities — Lawson’s selling, installing, supporting, servicing, or training — could still be enjoined.

. The dissent suggests we affirmed a determination of contributory infringement of the method claims. Diss. Op. at 1364-65. In fact, the panel opinion in ePlus I did not address contributory infringement. This is unsurprising, since contributory infringement of the method claims was barely mentioned in the parties’ briefs in that appeal. Significantly, the panel did not even mention contributory infringement when it described ePlus’ theories of infringement of the method claims. See ePlus I, 700 F.3d at 514 ("As to the method claims, ePlus alleged that (1) Lawson induces its customers to use software programs to perform all of the steps of the asserted method claims; (2) Lawson itself infringes the method claims by demonstrating, installing, managing, and maintaining its software products for its customers; and (3) Lawson, its customers, and third party vendors jointly . infringed the asserted method claims.”).

. The entirety of our discussion is as follows:
Moreover, in our view, the record contains substantial evidence to show that Lawson itself infringes claim 26. In particular, there is evidence that Lawson installed, maintained, demonstrated, and managed the infringing systems for its customers. The evidence includes course catalogs and webinar presentations offered by Lawson to its customers. ePlus also offered testimony at trial to the effect that Lawson’s professional services include developing, installing, and testing “up to and including bringing a system live” for its customers. J.A. 1941. ePlus also provided the jury with evidence that the live testing phase included performing actual procurements using Lawson's systems. All of this circumstantial evidence permits a reasonable jury to infer that Lawson performed the steps of claim 26. Finally, we have reviewed the record and are satisfied that it contains sufficient evidence of Lawson’s intent and knowledge to allow a reasonable jury to conclude that Lawson induced its customers to infringe claim 26. Thus, we affirm the district court’s denial of JMOL of non-infringement with respect to the jury's verdict of direct and induced infringement of claim 26.
ePlus I, 700 F.3d at 520-21.