# United States Court of Appeals
# for the Federal Circuit

_____

**UPI SEMICONDUCTOR CORPORATION,**
*Appellant,*

**v.**

**INTERNATIONAL TRADE COMMISSION,**
*Appellee,*

**AND**

**RICHTEK TECHNOLOGY CORP. AND
RICHTEK USA, INC.,**
*Intervenors.*

_____

2013-1157

_____

Appeal from the United States International Trade Commission in Investigation No. 337-TA-698.

- - - - - - - - - - - - - - - - - - - -

**RICHTEK TECHNOLOGY CORP. AND
RICHTEK USA, INC.,**
*Appellants,*

**v.**

**INTERNATIONAL TRADE COMMISSION,**
*Appellee,*

**AND**

# UPI SEMICONDUCTOR CORPORATION,
*Intervenor.*

————————————

2013-1159

————————————

Appeal from the United States International Trade Commission in Investigation No. 337-TA-698.

————————————

Decided:  September 25, 2014

————————————

STEVEN M. LEVITAN, Hogan Lovells US LLP, of Palo Alto, California, argued for uPI Semiconductor Corporation.  With him on the brief were JENNIFER M. LANTZ, CLARK S. STONE, and EDWARD C. KWOK.  Of counsel were CATHERINE E. STETSON and SEAN MAROTTA, of Washington, DC.

CLARK S. CHENEY, Attorney, Office of General Counsel, United States International Trade Commission, of Washington, DC, argued for appellee.  With him on the brief were PAUL R. BARDOS, Acting General Counsel, WAYNE E. HERRINGTON, Assistant General Counsel, and CLINT A. GERDINE, Attorney.

WILLIAM M. ATKINSON and M. SCOTT STEVENS,  Alston & Bird, LLP, of Charlotte, North Carolina, argued for Richtek Technology Corp., et al.  With them on the brief were THOMAS W. DAVISON and BENN C. WILSON, of Washington, DC; YITAI HU and ELIZABETH H. RADER, of Menlo Park, California.  Of counsel was KIRK T. BRADLEY.

————————————

Before NEWMAN, MOORE, and CHEN, *Circuit Judges.*

NEWMAN, *Circuit Judge.*

Before the court are the appeal of respondent-intervenor uPI Semiconductor Corp. ("uPI") and the companion appeal of complainant-intervenors Richtek Technology Corp. and Richtek USA, Inc. (together "Richtek") from rulings of the International Trade Commission in an action to enforce a Consent Order, *Certain DC-DC Controllers and Products Containing Same,* Inv. No. 337-TA-698 (75 Fed. Reg. 446). We affirm the Commission's ruling that uPI violated the Consent Order as to the imports known as "formerly accused products," and affirm the modified penalty for that violation. We reverse the ruling of no violation as to the "post-Consent Order" products. The case is remanded for further proceedings in accordance with our rulings herein.

## BACKGROUND

uPI and Richtek are technology companies in the business of designing and selling DC-DC controllers. DC-DC controllers convert direct current from one voltage to another, and are embodied in chips for use in "downstream" electronic devices such as computer motherboards. Founded in 1998, Richtek Technology Corp. has its principal place of business in Taiwan. Richtek USA has its principal place of business in California. uPI was founded in 2005 by former Richtek employees and has its principal place of business in Taiwan. uPI chips are imported into the United States either directly or as incorporated in various downstream devices.

Richtek in 2010 filed a complaint with the International Trade Commission, alleging that uPI misappropriated Richtek's trade secrets and infringed Richtek's United States patents, and that uPI's importation, sale for importation, or sale after importation of DC-DC controllers and products containing these controllers violated

19 U.S.C. §1337 (Section 337) of the Tariff Act. Three Richtek patents are at issue in this appeal: U.S. Patent No. 7,315,190 ("the '190 patent"), No. 6,414,470 ("the '470 patent"), and No. 7,132,717 ("the '717 patent").

Shortly before the evidentiary hearing scheduled by the Commission's Administrative Law Judge ("ALJ"), uPI moved to terminate the investigation, pursuant to 19 C.F.R. §210.21, by unilaterally offering to enter into a consent order whereby uPI would cease importation of all products produced using or containing Richtek's trade secrets or infringing Richtek's patents. Over Richtek's objection, the ALJ agreed to enter the consent order substantially as drafted and proposed by uPI. The Commission declined to review the ALJ's grant of uPI's motion, and, on August 13, 2010, the Commission terminated the investigation and entered the Consent Order.

The Consent Order includes the following provisions:

A. Effective immediately upon the entry of this Consent Order, uPI will not import into the United States, sell for importation into the United States, or sell or offer for sale in the United States after importation, or knowingly aid, abet, encourage, participate in, or induce importation into the United States, the sale for importation into the United States, or the sale, offer for sale, or use in the United States after importation, without the consent or agreement of Richtek, any DC-DC controllers or products containing same which infringe claims 1-11, 26, or 27 of U.S. Patent No. 7,315,190, claims 29 or 34 of U.S. Patent No. 6,414,470, or claims 1-3 or 6-9 of U.S. Patent No. 7,132,717, or which are produced using or which contain Richtek's asserted trade secrets.

      ***

D.  UPI will not challenge the validity of Richtek's intellectual property rights in any administrative or judicial proceeding to enforce the Consent Order, but may do so in any other proceeding.

    \*\*\*

F.  The requirements of Paragraph A of this Consent Order shall be of no further force and effect with respect to Richtek's asserted trade secrets ten (10) years after issuance of this Order.

Approximately one year later Richtek filed an Enforcement Complaint alleging, *inter alia*, that uPI was in violation of the Consent Order.  The Commission instituted an enforcement proceeding, the ALJ held an evidentiary hearing, and, on June 8, 2012, the ALJ issued an Enforcement Initial Determination ("EID").  The EID separated the accused uPI products into two categories: (1) products that were accused in the prior ITC investigation of infringing Richtek's patents or accused of being produced using or containing Richtek's trade secrets (the "formerly accused products"); and (2) products allegedly developed and produced after entry of the Consent Order (the "post-Consent Order products").

The ALJ found that the formerly accused products contained or were produced using Richtek's trade secrets and that the formerly accused products alone, or incorporated into downstream products, infringed the '190, '470, and '717 patents.  The ALJ also found that the post-Consent Order products infringed the '470 and '717 patents.  However, the ALJ found that the post-Consent Order products were independently developed, and therefore not produced using Richtek's trade secrets, due to "clean room" procedures uPI implemented.  The ALJ stated:

[T]he evidence shows that uPI took steps to insulate its new product lines from any misconduct

> that took place in the past.  uPI has satisfied all of
> the elements of the independent development de-
> fense, regardless of any similarities that its post-
> consent order designs may bear to Richtek's prod-
> ucts.

EID at 104.

The ALJ assessed a civil penalty against uPI in the amount of $10,000 for each day on which the violative formerly accused or post-Consent Order products entered or were sold into the United States.  With respect to the formerly accused products, only those controllers sold by uPI to downstream customers after the Consent Order issued could potentially constitute a violation of the Consent Order.  The ALJ weighed Richtek's and uPI's competing evidence as to the lag time between the sale of a formerly accused chip to a downstream customer and the importation of the downstream product containing that chip.  EID at 115-16.  Adopting uPI's estimate of five months over Richtek's estimate of three months, the ALJ excluded from violation any downstream products containing the formerly accused chips imported or sold in the United States before January 29, 2011.  The ALJ found importation or sales of articles in the United States in violation of the Consent Order occurred on 75 days, and levied a total penalty of $750,000.  EID at 120-21.

Both sides petitioned the full Commission for review. uPI admitted its violative importation of formerly accused chips for a single day, and argued that the ALJ's finding of violation for the remaining 74 days was erroneous because there was no explicit finding that uPI had know-ingly aided or abetted its customers' importations, and because there was no proof that uPI's upstream sales of the formerly accused products were directly linked to downstream U.S. sales or importations.  uPI also chal-lenged the ALJ's finding of infringement of the '470

patent. uPI did not challenge the ALJ's findings respecting the '190 patent or the '717 patent.

Richtek's petition for review, in turn, challenged the ALJ's finding that the post-Consent Order products did not embody Richtek's trade secrets. Richtek argued that the post-Consent Order products are substantially similar or identical to the formerly accused products and the asserted trade secrets, and that the post-Consent Order products continue to be produced using Richtek's trade secrets.

The Commission's Notice of its decision to review the EID explained that it would "review the following: the ALJ's finding of infringement of the '470 patent; the ALJ's finding of infringement of the '190 patent; and the ALJ's determination that uPI violated the August 13, 2010 consent order on 75 days." 77 Fed. Reg. 49022-01.

The full Commission affirmed the ALJ's findings that the formerly accused products were produced using or contained Richtek's trade secrets and that the post-Consent Order products were produced without Richtek's trade secrets. The Commission also affirmed the ALJ's finding that uPI's formerly accused products violated the Consent Order with respect to the '190 patent because uPI knowingly aided or abetted the sale or importation of formerly accused products that when incorporated into downstream products directly infringe the '190 patent. The Commission reversed the ALJ's finding that uPI's post-Consent Order and formerly accused products violated the Consent Order with respect to the '470 patent. The Commission vacated as moot the ALJ's finding of violation of the Consent Order with respect to the '717 patent because the asserted claims thereof were cancelled in a reexamination proceeding.

The Commission adopted the ALJ's decision to apply a $10,000 penalty for each day of violation of the Consent Order. Having declined to adopt some of the ALJ's find-

ings as to violations, the Commission accordingly reduced the number of days of violation from 75 to 62 and sustained a civil penalty in the amount of $620,000.

The Commission thus sustained the ALJ's findings of violations of the Consent Order only with respect to the formerly accused products, as to which the Commission found uPI directly imported violative controllers on one day, and on 61 days knowingly aided or abetted the United States sale of formerly accused products that, standing alone or when incorporated into downstream products, infringed the '190 patent or contained or were produced using Richtek's trade secrets.

Richtek appeals the Commission's ruling that the post-Consent Order products do not use or contain Richtek's trade secrets, but does not appeal the rulings as to Consent Order violations concerning the '190 patent, the '470 patent, or the '717 patent. uPI does not appeal the ruling that the formerly accused products were produced using or contain Richtek's trade secrets, but does appeal the ruling of liability for imported downstream products that contain formerly accused products and the ruling of infringement of the '190 patent. uPI also appeals from the Commission sustaining eight days of violations attributable solely to infringement of the '470 patent, which the Commission found was not infringement.

## DISCUSSION

On appeal of a Commission enforcement determination, we "review the Commission's legal determinations without deference and its factual determinations for substantial evidence." *Fuji Photo Film Co. v. Int'l Trade Comm'n*, 474 F.3d 1281, 1293 (Fed. Cir. 2007). This court "must affirm a Commission determination if it is reasonable and supported by the record as a whole, even if some evidence detracts from the Commission's conclusion." *Spansion, Inc. v. Int'l Trade Comm'n*, 629 F.3d 1331, 1344

(Fed. Cir. 2010) (internal quotation marks and citation omitted).

The Commission has authority to terminate a Section 337 investigation by consent order, and to investigate and impose a penalty for violation of a consent order. 19 U.S.C. §1337(c), (f); *see San Huan New Materials High Tech, Inc. v. Int'l Trade Comm'n*, 161 F.3d 1347, 1356-57 (Fed. Cir. 1998) ("A consent order whereby the Commission terminates its investigation upon agreement of the respondent to cease its infringing activities invokes the restraint of federal power, upon the respondent's undertaking to comply with the law; thus its violation is subject to federal remedy, by penalty and enforcement in accordance with statute and regulation.").

Consent orders are construed as contracts. *See United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 236-37 (1975) ("[S]ince consent decrees and orders have many of the attributes of ordinary contracts, they should be construed basically as contracts . . . ." (footnote omitted)). Contract interpretation is a question of law reviewed *de novo. E.g.*, *Rembrandt Data Techs., LP v. AOL, LLC*, 641 F.3d 1331, 1336 (Fed. Cir. 2011).

I

UPI'S APPEAL

A. Third Party Imports

uPI does not now challenge the Commission's determination that uPI's formerly accused DC-DC controllers were produced using Richtek trade secrets. Nor does uPI contest the Commission's finding that downstream products containing the formerly accused products were imported into the United States after the Consent Order issued or that uPI made post-Consent Order upstream sales of formerly accused products. However, uPI objects to any bar under the Consent Order against importation

by uPI's customers of products containing infringing DC-DC controllers.

uPI states that, despite its agreement by Consent Order not to knowingly aid, abet or induce importation of products produced using or containing Richtek trade secrets or infringing Richtek patents, this provision cannot reach third-party importations. uPI states that *Kyocera Wireless Corp. v. International Trade Commission*, 545 F.3d 1340 (Fed. Cir. 2008), prohibits the Commission from excluding imports of non-respondents absent a general exclusion order. uPI states that because this case was terminated by Consent Order, with no general exclusion order, no penalty can be based on importations by non-respondents, whether or not they were knowingly aided or abetted by uPI.

In *Kyocera* this court stated: "Section 337 permits exclusion of the imports of non-respondents only via a general exclusion order, and then too, only by satisfying the heightened requirements of 1337(d)(2)(A) or (B)." 545 F.3d at 1358. uPI states that *Kyocera* established that a Consent Order does not apply to third party importations. uPI states that although it agreed by Consent Order not to knowingly aid or abet importation of violative products, the Commission lacks authority to impose a penalty on uPI based on importations by non-respondents because that would have the effect of excluding products of non-respondents in the absence of a general exclusion order, in contravention of the decision in *Kyocera*.

uPI also argues that substantial evidence does not support violation of the Consent Order's knowingly aiding or abetting provision because the Commission had the burden of proving which downstream products imported into the United States were derived from uPI's *post*-Consent Order sales of formerly accused DC-DC controllers. uPI states that it is possible that all of the United States imports of downstream products containing for-

merly accused DC-DC controllers were derived from uPI sales of the formerly accused products occurring before the Consent Order issued, which could not give rise to a violation.

Substantial evidence supports the Commission's findings that uPI post-Consent Order upstream sales were linked to subsequent downstream United States imports or sales of the formerly accused products and that uPI knowingly aided or abetted United States imports or sales of the formerly accused products. The Commission accepted uPI's testimony that it took several months for post-Consent Order sales of the formerly accused products to appear in the United States, excluding all imports within a five-month period from the calculation of days of violation, and counting all imports thereafter. uPI attempts to impeach the Commission's finding as to the lag time between uPI upstream sales and downstream United States imports by pointing to testimony of uPI expert, Dr. Stephen Prowse. uPI states that Dr. Prowse testified that it could take as long as thirteen months from the upstream sale of a formerly accused product before that product entered the United States. However, Dr. Prowse testified that the average lag time was 150 days, and it was upon this testimony that the ALJ rejected Richtek's estimate of a three-month lag time and accepted uPI's assertion of a five-month lag time, thereby excluding from calculation of days of violation any United States sales or imports occurring before five months after the Consent Order issued. EID at 115-16.

uPI did not argue that a longer lag time should be adopted, in its briefing before the full Commission for review of the ALJ's decision, despite the Commission's request for briefing on the factual basis for violation of the knowingly aiding and abetting provision of the Consent Order. uPI even referred to the five-month lag time as "the proper lag time analysis (which the ALJ adopted)" in its petition for review of the EID.

The Commission relied on spreadsheets produced by uPI showing uPI's purchase order data and sales of formerly accused products to downstream customers after the Consent Order issued. A uPI executive testifying before the Commission acknowledged that the spreadsheet data showed sales of formerly accused products to customers after the Consent Order issued. Spreadsheets produced by uPI downstream customers showed the customers' post-Consent Order United States sales of products containing the formerly accused products, as well as a tracking report by a uPI distributor showing that uPI post-Consent Order sales of formerly accused products were made to uPI contract manufacturers.

The Commission also relied on testimony by uPI executives that uPI knew the contract manufacturers to whom uPI's distributors sold the formerly accused products, and knew that these contract manufacturers imported downstream products into the United States. The Commission supported its findings in testimony by uPI executives allegedly intimating uPI's intent to conduct its business in a manner that could be inconsistent with the restrictions imposed by the Consent Order. The Commission also cited a uPI executive's testimony that, while uPI told its customers that uPI would stop distributing the formerly accused products by the end of 2011, it accepted orders of formerly accused products as late as February 2012, with the last date for their shipment being May 2012.

uPI does not contest the evidence upon which the Commission relied. Rather, uPI argues this evidence does not link a particular post-Consent Order sale by uPI of a specific DC-DC controller to a particular downstream U.S. sale or importation of that same DC-DC controller. uPI argues that while the spreadsheet data show the post-Consent Order upstream sales and downstream imports of DC-DC controllers identified by the same model numbers, "[i]t is not enough that the chips are the same model

number; they must be shown to be the same chips." App. No. 2013-1157, uPI Br. at 48.

The Commission's reliance on evidence of uPI upstream post-Consent Order sales of the formerly accused products, evidence of post-Consent Order downstream United States imports or sales of the same model number formerly accused products, the lag time between upstream sale and United States entry, and testimony by uPI executives, reasonably supports the Commission's finding that uPI violated the knowingly aiding or abetting provision of the Consent Order. The Commission's conclusion is supported by substantial evidence, that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of New York v. NLRB*, 305 U.S. 197, 229 (1938). We discern no error in the Commission's ruling on this aspect.

*Kyocera* does not prohibit the Commission from enforcing the Consent Order in accordance with its terms, although the Commission did not impose an exclusion order. The Consent Order prohibits uPI from knowingly aiding or abetting the importation of DC-DC controllers produced using or containing Richtek trade secrets or infringing Richtek patents, "or products containing same." The Commission had statutory authority to assess a civil penalty against uPI for its violation of the Consent Order's knowingly aiding or abetting provision.

## B. The '190 Patent

uPI also challenges the Commission's finding that uPI's formerly accused products directly infringed the '190 patent, although uPI acknowledges that reversal of the Commission's findings as to the '190 patent "will not change the total days of violation, or the associated civil penalties, because the Commission had an alternate basis on which to find a violation by uPI's 'aiding and abetting' importation of the same downstream third party products

containing uP61xx DC-DC-controllers." App. No. 2013-1157, uPI Br. at 59.

The Commission responds that it did not find that uPI directly infringed the '190 patent, but that uPI violated the Consent Order prohibition on knowingly aiding or abetting the sale or importation into the United States of any DC-DC controllers or products containing same that infringe the '190 patent. The Commission states that it affirmed the ALJ's finding that the '190 patent was directly infringed by downstream devices incorporating formerly accused products, which constituted a violation under the knowingly aiding or abetting provision of the Consent Order.

uPI does not challenge the Commission's finding that downstream products incorporating formerly accused products practice each element of each asserted claim of the '190 patent, but instead argues "[t]he Commission's finding of direct infringement by uPI of the '190 patent (if that is what it found) was erroneous." App. No. 2013-1157, uPI Br. at 59. The record makes clear the Commission did not find direct infringement of the '190 patent by the uPI upstream products. For the reasons discussed in the preceding section, we affirm the Commission's finding that the United States sale or importation of downstream products, which incorporate uPI's upstream products and infringe the '190 patent, constitutes a violation of the Consent Order's knowingly aiding or abetting provision.

## C. The '470 Patent

When the Commission reversed the ALJ's finding of infringement of the '470 patent, after invalidation on reexamination, the Commission did not reduce the eight days of penalty attributed to infringement of this patent. The Commission concedes that this was an error. We therefore reduce the total penalty by eight days. This leaves a total penalty of 54 days on uPI's appeal.

## II

### RICHTEK'S APPEAL

Richtek challenges the Commission's finding that uPI's post-Consent Order controllers do not contain or are not produced using Richtek trade secrets. Richtek states that uPI's "clean room" procedures did not avoid all use of its trade secrets for the post-Consent Order products and that substantial evidence does not support the Commission's finding that the post-Consent Order products were not produced using and do not contain Richtek trade secrets.

Richtek defined its trade secrets as the computer files used to design circuits and circuit schematics, not as the circuits themselves. The Consent Order prohibits selling or importing, and aiding or abetting the sale or importation, of products that are produced using Richtek trade secrets, or products containing same. uPI does not challenge the Commission's finding that its formerly accused products were produced using or contain Richtek trade secrets, but argued to the Commission that its post-Consent Order products were independently developed through "clean room" procedures, and did not use the Richtek trade secrets. The ALJ found that "uPI has satisfied all of the elements of the independent development defense, regardless of any similarities that its post-consent order designs may bear to Richtek's products." EID at 104.

### A. The Formerly Accused Products

The Commission affirmed the ALJ's finding that uPI's formerly accused products contained or were produced using Richtek trade secrets. The ALJ relied on comparisons of Richtek's trade secrets and the uPI schematics, layouts, and design files used to create the formerly accused products, and found that the number of similarities established uPI's use of Richtek trade secrets. The

ALJ credited the testimony of Richtek's expert, who testified that the extent of duplication could not be explained by coincidence, or by re-creation through unaided human memory.

The ALJ also took note that numerous uPI employees were former Richtek employees, including uPI's President and Vice-Chairman, as well as engineers, project managers, and its Director of R&D. The ALJ also credited evidence that a former Richtek employee at uPI sent out an email requesting that people "steal" Richtek circuit schematics, imploring the email recipients "Please support me." EID at 95.

Although the ALJ engaged in a comparison of the Richtek trade secrets and the formerly accused products, the ALJ stated, and the Commission affirmed, that "[e]ven without a comparison of uPI and Richtek schematics, the weight of the evidence suggests that the accused uPI product families were created with the assistance of misappropriated Richtek documents and files." *Id.* at 96.

These findings are not here disputed.

### B. The Post-Consent Order Products

The record as a whole does not support with substantial evidence the Commission's finding that uPI's post-Consent Order products were not produced using Richtek trade secrets.

uPI stated that it engaged outside design firms to create new layouts and schematics to produce a new line of DC-DC controller chips, and that it did not provide the outside design firms with Richtek trade secrets or uPI's former schematics or layouts. However, the evidence was grossly inadequate.

uPI stated that uPI employee Charles Chang was tasked with supplying outside design firms with symbol libraries and project configurations (ECS.ini) files for the

creation of DC-DC controllers. The Commission accepted uPI's argument that Mr. Chang did not rely on Richtek or uPI materials, although Mr. Chang did not testify. Instead, uPI offered the testimony of its experts, Dr. Min and Dr. Kelly. Dr. Min testified that in a telephone conversation Mr. Chang stated that he discovered a copy of the ECS.ini file in his old graduate school notebook, and that the file contained the same 23 lines of code in the ECS.ini files that uPI used for its formerly accused and post-Consent Order products. Dr. Kelly testified, based on an interview with Mr. Chang, that Mr. Chang created the ECS.ini file and symbol libraries by himself. Mr. Chang's personal testimony was excluded because uPI did not disclose his involvement until after discovery had closed and Richtek did not have an opportunity to depose him. The Commission accepted the position that Mr. Chang independently developed the ECS.ini file.

Richtek's experts testified to the high degree of similarity and identity between uPI's post-Consent Order products and formerly accused products, compared with Richtek's trade secrets. Richtek witnesses pointed to the many unchanged features of the layouts and the circuitry, including errors therein. Richtek argues that Mr. Chang's discovery that he long ago possessed a code identical to Richtek's strains credibility.

The Commission found that "uPI took steps to insulate its new product lines from any misconduct that took place in the past . . . regardless of any similarities that its post-consent order designs may bear to Richtek's products." EID at 104. However, that the post-Consent Order products could have been independently developed is not evidence of independent development itself. *See Richardson v. Suzuki Motor Co.*, 868 F.2d 1226, 1243 (Fed. Cir. 1989) ("[n]or does the possibility of independent discovery relieve [defendant] of [trade secret] liability"); *Am. Can. Co. v. Mansukhani*, 742 F.2d 314, 334 n.24 (7th Cir. 1984) ("possibility of reverse engineering or independent devel-

opment does not excuse one who obtains trade secrets wrongfully").

The record as a whole does not contain substantial evidence to support a finding of uPI's independent development. It is undisputed that 23 lines of code in the ECS.ini file, covered by Richtek's trade secrets, appear verbatim in the ECS.ini file uPI used for its post-Consent Order products. The ALJ considered this duplication in finding uPI's violative use of Richtek trade secrets for its formerly accused products, but disregarded the continued duplication for the post-Consent Order products.

The Commission found that uPI made "revisions" to the circuit designs as provided by the outside design firms. App. No. 2013-1159, ITC Br. at 42. However, many examples of repetition of extraneous markings, notations, and purported design errors from Richtek's trade secrets are in uPI's schematics for its post-Consent Order products. With respect to the extraneous markings and notations, neither the Commission nor uPI points to any evidence to rebut Richtek's assertion that these markings and errors are evidence of continued use of the trade secrets.

With respect to the erroneous notations, the ALJ, as well as the Commission and uPI, point only to the testimony of uPI's expert that the reproduction of the purported design errors indicates common knowledge. EID at 109; App. No. 2013-1159, uPI Br. at 48-49; App. No. 2013-1159, ITC Br. at 49-50. No documentary evidence supports the contention that the design errors reflect common knowledge. The Commission argues that there is no evidence the purported design errors are incorrect "for *uPI's* plainly different circuit." App. No. 2013-1159, ITC Br. at 49-50. However, Richtek appears correct in its citations showing identity of the Richtek and uPI schematics, as well as reproduction of purported design errors. The reproduction of design errors, notations and extrane-

ous markings is not consistent with independent development. *See, e.g.*, *In re Certain Cast Steel Ry. Wheels, Processes for Mfg. or Relating to Same and Certain Prods. Containing Same,* Inv. No. 337-TA-655, USITC Pub. 4265 (Oct. 2011) (an error in complainant's trade secrets reproduced in respondent's technical documents was "conclusive evidence of [ ] copying and use of [ ] Trade Secrets").

On the record provided, substantial evidence does not support the Commission's conclusion that uPI's post-Consent Order products were independently developed. The determination that uPI did not violate the Consent Order with respect to post-Consent Order products is reversed. We remand for further proceedings with respect to violation of the Consent Order.

### AFFIRMED-IN-PART, REVERSED-IN-PART, AND REMANDED