# United States Court of Appeals for the Federal Circuit

---

**DELORME PUBLISHING COMPANY, INC., DELORME INREACH LLC,**
*Appellants*

**v.**

**INTERNATIONAL TRADE COMMISSION,**
*Appellee*

---

2014-1572

---

Appeal from the United States International Trade Commission in Investigation No. 337-TA-854.

---

Decided: November 12, 2015

---

PETER J. BRANN, Brann & Isaacson, Lewiston, ME, argued for appellants. Also represented by STACY O. STITHAM, DAVID SWETNAM-BURLAND.

CLINT A. GERDINE, Office of the General Counsel, United States International Trade Commission, Washington, DC, argued for appellee. Also represented by DOMINIC L. BIANCHI, WAYNE W. HERRINGTON.

---

Before MOORE, REYNA, and TARANTO, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* MOORE.

Opinion dissenting-in-part filed by *Circuit Judge* TARANTO.

MOORE, *Circuit Judge*.

DeLorme Publishing Company, Inc. and DeLorme InReach LLC (collectively, "DeLorme") appeal from a decision by the International Trade Commission ("Commission") (1) finding that DeLorme violated a consent order by selling InReach 1.5 and SE devices containing imported components, and (2) imposing a civil penalty of $6,242,500. *Certain Two-Way Global Satellite Communication Devices, System and Components Thereof*, Inv. No. 337-TA-854 (Enforcement), Comm'n Op. (June 17, 2014) (J.A. 40–90) ("Comm'n Op."). We *affirm*.

BACKGROUND

In September 2012, the Commission instituted an investigation to determine if DeLorme was violating section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, by importing, selling for importation, or selling after importation "certain two-way global satellite communication devices, system and components thereof" that allegedly infringed claims 1, 2, 5, 10–12, and 34 of BriarTek IP, Inc.'s U.S. Patent No. 7,991,380. *Certain Two-Way Global Satellite Communication Devices, System and Components Thereof*, Inv. No. 337-TA-854, Notice of Institution of Investigation (Sept. 17, 2012) (J.A. 420–22). The '380 patent is directed to emergency monitoring and reporting systems comprising a user unit and a monitoring system that communicate through a satellite network. The accused products included DeLorme's InReach 1.0 and 1.5 satellite-communication devices, as well as the software and service plan used with the devices.

In April 2013, the Commission terminated the investigation based on entry of a consent order proposed by DeLorme. *Certain Two-Way Global Satellite Communica-*

*tion Devices, System and Components Thereof*, Inv. No. 337-TA-854, Termination of Investigation (Apr. 5, 2013) (J.A. 1505–06). In the consent order, DeLorme agreed to the following:

> Upon entry of the proposed Consent Order, DeLorme shall not import into the United States, sell for importation into the United States, or sell or offer for sale within the United States after importation any two-way global satellite communication devices, system, and components thereof, that infringe claims 1, 2, 5, 10–12, and 34 of the '380 Patent after April 1, 2013, until the expiration, invalidation, and/or unenforceability of the '380 Patent.

*Certain Two-Way Global Satellite Communication Devices, System and Components Thereof*, Inv. No. 337-TA-854, Consent Order ¶ 1 (April 5, 2013) (J.A. 1507–09) ("Consent Order").

On May 24, 2013, the Commission instituted an enforcement proceeding based on BriarTek's allegations that DeLorme violated the Consent Order by, *inter alia*, selling InReach 1.5 and SE devices containing imported components. Four days later, DeLorme filed an action against BriarTek in the United States District Court for the Eastern District of Virginia, seeking declaratory judgment of noninfringement and invalidity of the '380 patent. While the district court action was pending, the Commission issued a decision in the enforcement proceeding (1) finding that DeLorme violated the Consent Order, and (2) imposing a civil penalty of $6,242,500. Comm'n Op. at 1–2. DeLorme appeals. We have jurisdiction under 19 U.S.C. § 1337(c) and 28 U.S.C. § 1295(a)(6).

## DISCUSSION

We review the Commission's legal determinations in an enforcement proceeding without deference and its

factual determinations for substantial evidence. *uPI Semiconductor Corp. v. Int'l Trade Comm'n*, 767 F.3d 1372, 1377 (Fed. Cir. 2014). "This court must affirm a Commission determination if it is reasonable and supported by the record as whole, even if some evidence detracts from the Commission's conclusion." *Id.* Consent orders are interpreted as contracts. *Id.* Contract interpretation is a question of law. *Id.* We review interpretation of a contract or consent order de novo. *Id.* Patent infringement, whether direct or indirect, is a question of fact. *i4i Ltd v. Microsoft Corp.*, 598 F.3d 831, 850 (Fed. Cir. 2010). We review claim construction de novo except for subsidiary facts based on extrinsic evidence, which we review for clear error. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841–42 (2015). We review the Commission's imposition of a civil penalty under 19 U.S.C. § 1337(f)(2) for abuse of discretion. *Ninestar Tech. Co. v. Int'l Trade Comm'n*, 667 F.3d 1373, 1380 (Fed. Cir. 2012).

I.

The Commission determined that DeLorme violated the Consent Order with regard to claims 1 and 2 of the '380 patent. It found that DeLorme (1) assembled the accused InReach 1.5 devices by converting previously imported devices and (2) assembled the accused InReach SE devices using, *inter alia*, imported plastic housing components. It determined that "[u]nder the terms of the Consent Order, DeLorme violates the order if, after entry of the order, it imports, sells for importation, or sells or offers for sale within the United States after importation any infringing two-way global satellite communication devices, system, or components thereof." Comm'n Op. at 2. It concluded that DeLorme induced infringement and violated the Consent Order by selling the newly accused devices with instructions to use them in a manner that infringed claims 1 and 2 of the '380 patent. While it concluded that DeLorme also induced infringement by activating previously sold InReach devic-

es, such infringement "did not equate to" a violation of the Consent Order. *Id.* at 24–25.

DeLorme argues that even if the devices infringed the claims, the Consent Order did not preclude DeLorme from selling domestically manufactured devices containing imported, noninfringing components. It argues that the terms of the Consent Order instead prohibited DeLorme from using imported components only if the components themselves infringed. It argues that the Commission "rewrote" the Consent Order to "prohibit not just the use of imported, *infringing*, components, but also the use of *any* imported components." Appellants' Br. 23. It argues that the Commission's interpretation of the Consent Order exceeded its authority to block importation of only "articles that . . . infringe." 19 U.S.C. § 1337(a)(1)(B)(i).

We agree with the Commission that DeLorme violated the Consent Order by selling InReach 1.5 and SE devices containing imported components with instructions for its customers to use the devices in an infringing manner. The Consent Order provided that DeLorme could not import, sell for importation, or sell or offer for sale after importation "any two-way global satellite communication devices, system, and components thereof, that infringe claims 1, 2, 5, 10–12, and 34 of the '380 Patent." Consent Order ¶ 1. Under these terms, DeLorme was precluded from selling infringing devices containing imported components with instructions to infringe.

DeLorme's remaining arguments against the Commission's finding that it violated the Consent Order are unpersuasive. For example, the claims are not limited as proposed by DeLorme, and substantial evidence supports the Commission's finding of infringement. Under the Supreme Court's recent decision in *Commil USA, LLC v. Cisco Systems*, 135 S. Ct. 1920, 1928 (2015), a good-faith belief in the patent's invalidity was not a defense to induced infringement. Thus, the Commission did not err

in its conclusion that DeLorme violated the Consent Order.

## II.

The Commission imposed a civil penalty under 19 U.S.C. § 1337(f)(2) of $27,500 per day for 227 violation days, for a total of $6,242,500. Section 1337(f)(2) provides:

> Any person who violates an order issued by the Commission under paragraph (1) after it has become final shall forfeit and pay to the United States a civil penalty for each day on which an importation of articles, or their sale, occurs in violation of the order of not more than the greater of $100,000 or twice the domestic value of the articles entered or sold on such day in violation of the order. Such penalty shall accrue to the United States and may be recovered for the United States in a civil action brought by the Commission in the Federal District Court for the District of Columbia or for the district in which the violation occurs. . . .

Our court held in *San Huan New Materials High Tech, Inc. v. International Trade Commission*, that the Commission has the authority to issue § 1337(f)(2) civil penalties for violation of a consent order. 161 F.3d 1347, 1362 (Fed. Cir. 1998).

The Commission based its penalty determination in this case on the six "*EPROM* factors" adopted by this court: (1) the good or bad faith of the respondent, (2) the injury to the public, (3) the respondent's ability to pay, (4) the extent to which the respondent has benefited from its violations, (5) the need to vindicate the authority of the Commission, and (6) the public interest. Comm'n Op. at 27, 42–50 (citing, e.g., *Certain Erasable Programmable Read Only Memories (EPROMs)*, Inv. No. 337-TA-276 (Enforcement), Comm'n Opinion (July 19, 1991)); *see also*

*San Huan*, 161 F.3d at 1362. The Commission noted that the penalty was slightly more than a quarter of the statutory maximum of $100,000 per day. *See* 19 U.S.C. § 1337(f)(2). It found that the penalty was "appropriately proportionate to the value that the violative InReach devices bring to DeLorme" and consistent with the Commission's policy of deterring future violations while not driving DeLorme out of business. Comm'n Op. at 50 (citing, e.g., *San Huan*, 161 F.3d at 1364).

DeLorme argues that the Commission abused its discretion by imposing a "grossly excessive" civil penalty. Appellants' Br. 55. It argues that the penalty was not "proportionate" under the *EPROM* factors analysis. *Id.* (citing *San Huan*, 161 F.3d at 1362). For example, it argues that the Commission incorrectly determined that DeLorme acted in bad faith. It also argues that in assessing the benefit of the violative sales to DeLorme, the Commission should have looked to the imported components' value rather than that of the devices as a whole.

The Commission did not abuse its discretion in imposing a civil penalty of $6,242,500. The penalty—which amounted to $27,500 per day for 227 violation days—was substantially less than the statutory ceiling of $100,000 per violation per day. *See* 19 U.S.C. § 1337(f)(2). The Commission took into account the *EPROM* factors and we see no clear error in its fact findings or error in its application of the law. DeLorme has not shown, for example, that there was clear error in the Commission's findings regarding DeLorme's bad faith or that the violative sales greatly benefited DeLorme. We conclude that the Commission did not abuse its discretion in its penalty determination.

## III.

### A.  Interpreting the Consent Order

After the Commission issued the decision on appeal in this case, the Eastern District of Virginia granted summary judgment that claims 1, 2, 5, 10–12, 34, and 35 of the '380 patent are invalid for anticipation and obviousness.  *DeLorme Publ'g Co. v. BriarTek IP, Inc.*, 60 F. Supp. 3d 652 (E.D. Va. 2014).  We sought supplemental briefing from the parties as to how, if at all, the Eastern District of Virginia's decision impacted the Commission's enforcement of the Consent Order or appeal.

DeLorme argues that because claims 1 and 2 have been invalidated,[1] the Commission's enforcement decision and accompanying civil penalty cannot stand.  It argues that because the claims are invalid, it "cannot induce . . . infringement [of claims 1 and 2] now, nor be liable for having induced their infringement in the past." Appellants' Supp. Br. 3.

The relevant parts of the Consent Order are as follows:

> 1.  Upon entry of the proposed Consent Order, DeLorme shall not import into the United States, sell for importation into the United States, or sell or offer for sale within the United States after importation any two-way global satellite communication devices, system, and components thereof, that infringe claims 1, 2, 5, 10–12, and 34 of the '380 Patent after April 1, 2013, until the expira-

---

[1]    BriarTek appealed the Eastern District of Virginia's invalidity determination and we affirm in a concurrently issued decision. *DeLorme Publ'g Co. v. BriarTek IP, Inc.*, Appeal Nos. 15-1169, -1241.

tion, invalidation, and/or unenforceability of the '380 Patent.

2. DeLorme shall be precluded from seeking judicial review or otherwise challenging or contesting the validity of this Consent Order.

. . .

4. The Consent Order shall not apply with respect to any claim of any intellectual property right that has expired or been found or adjudicated invalid or unenforceable by the Commission or a court or agency of competent jurisdiction, provided that such finding or judgment has become final and non-reviewable.

Consent Order ¶¶ 1, 2, 4.

Interpretation of the Consent Order is a question of law. The Consent Order in this case is short—two pages long—and was drafted by DeLorme. Though we acknowledge that "[c]onsent decrees and orders have attributes both of contracts and of judicial decrees," *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 237 n.10 (1975), DeLorme agreed to the terms of the Consent Order. We conclude that the Consent Order unambiguously resolves the question of the impact of an invalidity decision on the enforcement of the Consent Order. The Consent Order bars certain sales and importations "until" one of three events occurs: "expiration, invalidation, and/or unenforceability of the '380 Patent." Consent Order ¶ 1. Additionally, it explains that the Consent Order ceases to apply when the patent claim at issue has "expired or been found or adjudicated invalid or unenforceable . . . provided that such finding or judgment has become final and non-reviewable." Consent Order ¶ 4. Thus, the Consent Order identifies three events which will cause it to no longer apply. When one of these events occurs the Consent Order will no longer apply, and De-

Lorme will no longer be constrained by its terms. Until one of these events occurs, however, the Consent Order is binding upon DeLorme.

In this case, the Consent Order applied to DeLorme at the time it committed the acts found to violate the order. The Consent Order applied to DeLorme even at the time the enforcement decision with the civil penalty issued.[2] DeLorme argues in its supplemental briefing that the subsequent district court invalidation of the claims retroactively eliminates the Consent Order such that we can no longer affirm the civil penalty properly adjudicated by the Commission. This argument is inconsistent with the plain language of the Consent Order itself. The Order explains that it applies "until" one of the triggering events. Paragraph 1 contains no language that could be construed as requiring (or even allowing) the triggering events to apply retroactively. Indeed, DeLorme argues with respect to paragraph 1 that invalidation "would end" its obligations—an argument that is forward-looking. Appellants' Suppl. Br. 5.

Paragraph 4 similarly provides that the Consent Order "shall not apply" with respect to any claim that "has . . . been" invalidated. Consent Order ¶ 4. Particularly when read in the context of the Consent Order as a whole, this provision is forward-looking and contains no language indicating that the invalidation trigger would apply retroactively. DeLorme's argument regarding paragraph 4—that the Commission would "no longer" retain jurisdiction over invalidated claims—is also forward-looking. Appellants' Suppl. Br. 5.

---

[2]    Because our concurrently issued affirmance of the district court's summary judgment of invalidity is still reviewable, the Consent Order continues to be binding upon DeLorme even now.

Indeed in application DeLorme's argument makes no sense. DeLorme acknowledges that the expiration and unenforceability triggers would have the same effect as the invalidation trigger because the plain language of the Consent Order treats them identically. If invalidation of claims 1 and 2 were to apply retroactively to eliminate the Commission's enforcement decision and accompanying penalty, then expiration of the claims would do the same. Under such a reading of the Consent Order, the Commission could determine that DeLorme violated the Consent Order and award a civil penalty in an enforcement action. Then, under DeLorme's proposed interpretation of the Consent Order, if the patent expires while the enforcement decision is on appeal, this court would be forced to vacate the enforcement decision. Under DeLorme's interpretation later expiration of the patent would erase an earlier violation and any civil penalty assessed for that violation. DeLorme would have no motivation to abide by the terms of the Consent Order and could violate the order, and when the patent inevitably expired, DeLorme's violation would need to be vacated. This is an absurd reading of the Consent Order.

DeLorme argues that its position is supported by the Commission Rules adopted after the Consent Order was entered in this case, which it purports now require consent orders to include statements that they become "null and void" if any claim of the patent expires or is held invalid or unenforceable "in a final decision, no longer subject to appeal." Appellants' Supp. Br. 6–7 (quoting 19 C.F.R. § 210.21(c)(4) (eff. May 20, 2013)); *see also* Consent Order at 1 ("DeLorme . . . agrees to the entry of this Consent Order and to all waivers and other provisions as required by Commission Rule of Practice and Procedure 201.21(c) . . . ."). This argument is unpersuasive. At the time of the Consent Order, Rule 210.21(c)(4) did not exist. The Commission Rules did not require inclusion of the statements that now exist at Rule 210.21(c)(4). Thus,

the statements set forth in this Rule were not incorporated into the Consent Order. Moreover, we note that even if the statements had been incorporated, the Consent Order becomes null and void only after a decision of invalidity that is "final" and "no longer subject to appeal." 19 C.F.R. § 210.21(c)(4)(x). The enforcement decision was entered for this case before the Eastern District of Virginia's invalidity decision. And even now, the invalidity decision remains subject to appeal. Finally, we note that like the Consent Order, the Rule groups the invalidation trigger with expiration and unenforceability triggers, which, as discussed above, cannot sensibly apply retroactively. We thus reject DeLorme's argument that the new Rules mandate reversal of the Commission's enforcement decision or the accompanying penalty.

DeLorme also argues that the Commission is not authorized to enforce a Consent Order with regard to invalid patent claims. This argument is inapplicable to this case. DeLorme's acts, the Commission's finding that those acts violated the Consent Order, and the Commission's imposition of a civil penalty all occurred before the summary judgment of invalidity. If that judgment becomes non-reviewable, the Consent Order will not apply prospectively as to the invalid claims. But the Commission's finding that DeLorme violated the Consent Order and the accompanying penalty for that violation will not be lifted. The Commission acted within the scope of its authority in enforcing the Consent Order.

In its supplemental briefing and at argument, the Commission declined to take a position on the interpretation of the Consent Order. The Commission laid out a number of possible actions this court could take, including (1) remand to the Commission for a determination of the effect of the affirmance of invalidity, or (2) "not to remand at all, but to proceed to judgment in both appeals." Appellee's Suppl. Br. 4. If the Consent Order were unclear as to the impact of the invalidation decision in this case, we

would remand. But the Consent Order unambiguously indicates that the invalidation trigger—like the expiration and unenforceability triggers—applies only prospectively. Neither the Commission nor DeLorme argues that the Consent Order is ambiguous. There is no reason to remand this case because the Consent Order unambiguously answers the question at issue.

## B. Our *ePlus* Decision

Finally, DeLorme argues that our recent decision in *ePlus, Inc. v. Lawson Software, Inc.*, 789 F.3d 1349 (Fed. Cir. 2015) requires that the Commission's civil penalty in this case be reversed. In *ePlus*, we (1) vacated an injunction after the U.S. Patent and Trademark Office cancelled the only patent claim on which the injunction was based, *id.* at 1355–56, and (2) set aside the civil contempt sanction imposed for violation of the vacated injunction, *id.* at 1361.

DeLorme's argument that *ePlus* controls this case is incorrect. *ePlus* held that a civil contempt sanction can be set aside when the underlying injunction, upon which the sanction is based, is still itself non-final or reviewable. As we explained in *ePlus,* "The rule for civil contempt for violating a provision of an injunction that is not final, i.e., that is still subject to litigation over the propriety of its issuance, is that '[t]he right to remedial relief falls with an injunction which events prove was erroneously issued.'" 789 F.3d at 1356 (quoting *United States v. United Mine Workers of Am.*, 330 U.S. 258, 295 (1947)). In *ePlus,* we determined that the injunction was not final (it was still subject to appellate review) at the time we were reviewing the civil contempt sanction and thus when the patent claims were cancelled, both the injunction and civil contempt sanction had to be vacated. *Id.* at 1361. In this case, in contrast, there is no question that the underlying Consent Order was final and not appealable. The Consent Order itself states that "DeLorme shall be precluded

from seeking judicial review or otherwise challenging or contesting [its] validity." Consent Order ¶ 2. Neither party has argued that the Consent Order in this case, like the injunction in *ePlus,* was not final or appealable. Therefore, we reject DeLorme's argument that *ePlus* permits us to reject the civil penalty assessed in this case. If the underlying order upon which a civil penalty or civil contempt sanction is based is final and no longer subject to appeal, the penalty or sanction cannot be vacated by subsequent events such as invalidation of the claims. Of course, if subsequent events warrant vacating the injunction, such as invalidation of the patent claims, then the injunction is vacated prospectively. *ePlus*, 789 F.3d at 1356. But such prospective relief (vacating the injunction) is not a basis for setting aside civil contempt sanctions. Likewise, the Consent Order by its terms will no longer apply prospectively once the invalidation is final and non-reviewable. Given that the Consent Order itself is already final and unappealable, this case is not governed by *ePlus.*[3] The Consent Order was final and no longer subject to review at the time of the violation, thus we cannot set aside the penalty for that violation. This distinction is critical.[4] Finally, *ePlus* is inapplicable here because *ePlus* involved the Patent Office's cancellation of claims, which voids claims "ab initio." *See, e.g.*, *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1346 (Fed. Cir. 2013).

---

[3] To the extent *ePlus* left open the question of whether civil contempt sanctions survive if the underlying injunction was final at the time the sanctions were imposed, 789 F.3d at 1358, that question is hereby resolved.

[4] We note that the § 1337(f)(2) "civil penalty" is punitive and paid to the government and thus more like a criminal contempt sanction which cannot be set aside. We leave this issue to a future case where its resolution is briefed and necessary to the outcome.

CONCLUSION

Because the Commission did not err in finding that DeLorme violated the Consent Order or abuse its discretion in imposing a civil penalty of $6,242,500, we *affirm*.

**AFFIRMED**

# United States Court of Appeals
# for the Federal Circuit

---

**DELORME PUBLISHING COMPANY, INC.,
DELORME INREACH LLC,**
*Appellants*

**v.**

**INTERNATIONAL TRADE COMMISSION,**
*Appellee*

---

2014-1572

---

Appeal from the United States International Trade Commission in Investigation No. 337-TA-854.

---

TARANTO, *Circuit Judge*, dissenting in part.

I join the majority's determination that the Commission committed no reversible error in entering its order imposing penalties on DeLorme for violation of the patent-infringement-based Consent Order. Nevertheless, I dissent from the affirmance of the penalty order. After the penalty order was entered, indeed after DeLorme filed its opening brief in this appeal challenging the order, a district court held the relevant patent claims to be invalid, and today we affirm that invalidation in No. 2015-1169. The Commission has not had an opportunity to consider the effect of the invalidation. I would remand this matter to the Commission for it to consider the effect

of the invalidation on enforcement of the civil penalty for pre-invalidation violations of the Consent Order.

The Commission has specifically argued to us that such a remand is "necessary"; it has not argued or conceded that we may decide for ourselves whether the penalty should stand. ITC Supp. Br. 3, 8. To decide the issue ourselves at this stage, I believe, we would have to conclude that the answer is clear as a matter of law—in particular, that (a) no possible factual findings or statutory or regulatory interpretations within the Commission's authority could affect the answer and (b) all material considerations have been fully explored in briefing here. I am not prepared to draw those conclusions. I do not currently think that the answer is clear, and I believe that potentially material considerations have not been fully developed, having been addressed only in abbreviated letter briefs from the parties requested by this court shortly before the oral argument.

Preliminarily, I note that I do not believe it matters that the appeal in No. 2015-1169 might be reheard by this court or that our judgment in that appeal might be the subject of discretionary certiorari review in the Supreme Court. Those possibilities are slim, but even if they mean that the district court's judgment of invalidation is not currently "final and non-reviewable" under paragraph 4 of the Consent Order, J.A. 1508, the present case is subject to the same possibilities of further review on the same timetables. The invalidation of the patent is highly likely to become final and non-reviewable at such later stages of this case or on a remand to the Commission. That is reason enough for a remand to the Commission, which can take appropriate action on the remand if the invalidation is set aside on further review in No. 2015-1169.

A

I begin with the language of the Consent Order, J.A. 1507–09, which is quoted in the majority opinion. I do not

address what legal effect that language would have if it were unambiguous. That language clearly contemplates that DeLorme could obtain a (final and non-reviewable) judgment of invalidity in district court. But I do not think that the language is unambiguous on the question before us concerning the effect of such a judgment regarding earlier conduct. I find ambiguity for several reasons.

Two features of the language of paragraph 1 offer support for the conclusion that the penalty for pre-invalidation conduct is meant to be enforceable under the Consent Order even after invalidation. One feature is the word "until." The other is the listing of "expiration" alongside "invalidation" and "unenforceability": a penalty for pre-expiration infringing conduct almost certainly remains enforceable after expiration.

Nevertheless, I do not think that the language does more than point in one direction; it does not unambiguously establish the answer. The "until" language does not imply a solely prospective effect of the event once it comes to pass. Linguistically, it allows the effect also to be retrospective, *i.e.*, to govern (non-final, still reviewable) determinations about earlier conduct. *Cf. MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 124–25 (2007) (noting that, under *Lear, Inc. v. Adkins*, 395 U.S. 653, 673 (1969), even when a patent license provided that a licensee was to pay royalties "until" a final judgment of invalidation, patent law precluded enforcement of that contractual commitment against a "repudiating" licensee).

The inclusion of "expiration" alongside "invalidation" and "unenforceability" likewise does not resolve the interpretive issue. "Expiration" has an intrinsically different meaning from "invalidation" and "unenforceability." The former intrinsically indicates nothing to undermine the legal force of the patent-compliance obligation before the event, whereas the latter two terms do precisely that—they imply that the legal obligation of patent

compliance was defective from day one. Serial enumeration of terms with different intrinsic temporal meanings does not imply that all have the same temporal meaning.

Further, there is an obvious absence of parallelism of the "expiration," "invalidation," and "unenforceability" terms. The first two terms refer to events; the third refers to a condition, not an event—specifically, not a judicial-pronouncement event. Moreover, with the third term of the series naming a condition that existed from the time of the patent's issuance, its inclusion in the series raises the question whether the second term in the series might also have been meant to refer to a similar condition present from issuance, *i.e.*, invalidity. If the inclusion of "expiration" points in one direction for interpreting the effect of "invalidation," the inclusion of "unenforceability" points the other way.

I find significant not only the language that the Consent Order uses, but also the language it does not use. Neither in paragraph 1 nor in paragraph 4 does the Consent Order use language that is readily available and widely used in the realm of licensing in order to be clear about the compliance obligation's coverage of pre-invalidation conduct. An example: "with respect to acts occurring thereafter." Brian G. Brunsvold et al., *Drafting Patent License Agreements* 474 (6th ed. 2008).[1] The best

---

[1]    Other examples of available language that is clearer than the Consent Order: "will not, however, be relieved from paying any royalties that accrued before the final decision," *Corporate Counsel's Guide to Licensing* § 36:2 (2015); "shall not relieve either party of its obligations and liabilities accruing up to the time of termination," 3 *Eckstrom's Licensing in Foreign and Domestic Operations: The Forms and Substance of Licensing* § 5:35 (2015); "shall not have a damage claim for refund or reimbursement . . . for past royalty payments," *Icon*

reading of language used is often influenced by how it contrasts with language not used. *See, e.g., Roberts v. Sea-Land Servs., Inc.*, 132 S. Ct. 1350, 1357 n.5 (2012); *New Process Steel, L.P. v. NLRB*, 560 U.S. 674, 681–82 (2010); *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242 n.4 (1981). That interpretive principle seems especially weighty where clarity is important, as it is with obligations enforced by penalties, since the choice not to use familiar language for imposing a particular obligation can often reasonably be understood to imply that that obligation is not being imposed.

It is a standard principle of contract interpretation that, where possible, provisions should be read in a way that harmonizes them. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995); *Banknote Corp. of America, Inc. v. United States*, 365 F.3d 1345, 1353 (Fed. Cir. 2004). Under that principle, paragraph 1 should be treated as a shorthand invocation of the same rule stated in paragraph 4 of the Consent Order. As a common-sense matter, it would be odd if the two paragraphs of the Consent Order stated two different rules on the same topic. And that is so even putting aside the regulatory background, described below, which suggests that paragraph 4 may be the primary Consent Order provision on the topic.

But paragraph 4 is itself unclear about the effect on pre-invalidation conduct of a final judicial determination

---

*Health & Fitness, Inc. v. Park City Entm't, Inc.*, No. 1:10-CV-195-RJS, 2013 WL 4027504, at *7 (D. Utah Aug. 7, 2013); "shall pay to [patentee] a royalty of Three Percent (3%) of the Net Sales of all Licensed Products sold . . . until the last date on which there is a Valid Claim," then defining "Valid Claim," *MedImmune, LLC v. PDL Bio-Pharma, Inc.*, No. C 08-5590 JF HRL, 2011 WL 61191, at *21 (N.D. Cal. Jan. 7, 2011).

that the claims were, from the beginning, invalid. Paragraph 4 does not use the "until" language that is present in paragraph 1, suggesting that "until" not be given great weight. And the language paragraph 4 does use is unclear on the point at issue.

As relevant here, paragraph 4 says that "[t]he Consent Order shall not apply with respect to any [patent] claim . . . that has . . . been found or adjudicated invalid . . . by . . . a court[,] . . . provided that such finding or judgment has become final and non-reviewable." J.A. 1508. The "shall" in that language is at least as likely an imperative as it is a future-tense word. Given the natural imperative meaning, the language can easily be understood to mean that prohibitions within the Consent Order do not apply, and cannot be treated as applying in making any determination requiring that they apply, to any claim that has been adjudicated to be invalid, once the invalidity adjudication is final and non-reviewable. The language itself does not command a (prospective-only) effect limited to post-invalidation conduct regarding such a claim.

For those reasons, I think at present that the answer to the question before us cannot be determined without looking outside the four corners of the Consent Order.

B

I do not feel adequately informed about a number of non-textual issues that could be material and might involve Commission interpretive, fact-finding, or other discretion. Such matters might affect the best interpretation of the Consent Order or might lead to a result justified independently of what is found to be the best interpretation.

We have not had a full exploration of how the Commission has treated such issues in the past. Nor have we been shown how similar Consent Orders have been interpreted elsewhere, whether in agency or judicial settings.

Such practices could be significant background for determining how best to interpret the Consent Order here.

The interpretation and application of a Consent Order generally follow principles of contract law. *E.g.*, *uPI Semiconductor Corp. v. Int'l Trade Comm'n*, 767 F.3d 1372, 1377 (Fed. Cir. 2014). Contract interpretation is a matter of law as long as the court can conclude that the contract is unambiguous on the point at issue, but if ambiguity exists, the question in many contract settings can become a factual one, or involve factual components, whether about the parties' subjective intent or about a usage, practice, or method in the field. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 837–38 (2015) (discussing Williston); Restatement (Second) of Contracts § 212(2) (1981); Farnsworth on Contracts § 7.14 at 336–37 (3d ed. 2004); Warner, *All Mixed Up About Contract: When Is Contract Interpretation a Legal Question and When Is It a Fact Question*, 5 Va. L. & Bus. Rev. 81 (2010). I cannot at present exclude the possibility that Commission findings of fact could matter here.

Moreover, an enforceable consent order, even a judicial consent decree, is not always to be treated under the same principles that govern an ordinary contract. *See Foster v. Hallco Mfg. Co., Inc.*, 947 F.2d 469 (Fed. Cir. 1991) (holding that the *Lear v. Adkins* ruling, which overrides certain contractual promises, does not override the claim-preclusive effect of a consent decree). Perhaps, in the present setting, there is reason not to find a contractual approach controlling. For now I focus on one such possible reason: the Consent Order is an order backed by (non-compensatory) penalties.

The First Circuit has written: "Consent decrees have to be specific and any ambiguities or omissions in the decree are construed against the person alleging a violation of the consent decree and invoking the contempt sanction." *Porrata v. Gonzalez-Rivera*, 958 F.2d 6, 8 (1st

Cir. 1992); *see FTC v. Kaykendall*, 371 F.3d 745, 760–61 (10th Cir. 2004). In this court's decision in *TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869 (Fed. Cir. 2011) (en banc), the five-judge dissent cited *Porrata* for the proposition that an order must be "clear and unambiguous" to be enforced in contempt, 646 F.3d at 899 n.7, and the majority did not disagree in principle, instead concluding that the dissent's point was not "persuasive on the facts before us," *id.* at 887–88. Under such principles, ambiguity in the Consent Order in the present case—regarding the effect of invalidation once invalidation becomes final— might be enough to bar enforcement. That principle seems particularly weighty where, as here, it appears to be easy for a Consent Order to be clear on the point at issue, as discussed above.

For penalties for a Consent Order violation, the anti-ambiguity principle might trump any conclusion to be drawn from the *contra proferentem* principle of contract interpretation—favoring construction against the drafter. *See Mastrobuono*, 514 U.S. at 62–63. Even that principle, however, is not of clear-cut application here on its own terms. On one hand, it appears that DeLorme initially drafted the Consent Order. On the other hand, DeLorme did so against a strong regulatory background that might be viewed as effectively having controlled what the Consent Order should say. The former point suggests construction against DeLorme, the latter suggests the opposite to the extent that the Commission's regulations effectively made the Commission the drafter.

The regulatory background is significant for that reason and independently as an interpretive tool.[2] The

---

[2]     *See, e.g.*, *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 240 (1975) (relying on the antitrust statutes to interpret terms in the consent order); *United States v. Bradley*, 484 F. App'x 368, 374 (11th Cir. 2012)

Consent Order was issued on April 5, 2013, J.A. 1507–09, based on a "consent order stipulation" submitted by DeLorme in early March 2013, J.A. 1495–97. At that time, the governing regulation specified what the "consent order *stipulation* shall" contain, including a statement that the Consent Order "shall not apply with respect to any claim . . . that has expired or been found or adjudicated invalid or unenforceable," "provided that such finding or judgment has become final and nonreviewable." 19 C.F.R. § 210.21(c)(3)(i)(B)(1) (2012) (emphasis added), *currently codified at id.* § 210.21(c)(3)(ii)(A). The required language appears in paragraph 6 of the March 2013 Consent Order Stipulation in this case. J.A. 1497. De-Lorme also included it in paragraph 4 of the proposed Consent Order. J.A. 1508.

DeLorme included the language in the proposed Consent Order even though, when the Consent Order in this case was proposed (and adopted), the Commission's regulations did not specify what a consent order itself

---

(rejecting interpretation of consent order that would require forfeiture given background principles that disfavor forfeiture); *Doe v. Briley*, 511 F. Supp. 2d 904, 918 (M.D. Tenn. 2007), *aff'd*, 562 F.3d 777 (6th Cir. 2009) (using a change in the city code to interpret a consent order); *Henderson v. Morrone*, 214 F. App'x 209, 213 (3d Cir. 2007) (construing consent order in light of differences between terms of the consent order and later-adopted regulations); *United States v. Saccoccia*, 433 F.3d 19, 29 (1st Cir. 2005) (finding ambiguity in consent order based on background forfeiture laws); *McDowell v. Phila. Hous. Auth.*, 423 F.3d 233, 239–40 (3d Cir. 2005) (interpreting consent order in light of housing regulations); *United States v. Charter Int'l Oil Co.*, 83 F.3d 510, 517–18 (1st Cir. 1996) (defining scope of consent order by looking to background law).

must say.  But it is evident that this language originated from the language in the Commission's requirement for what the required stipulation must say.  Moreover, at the time of the proposal and adoption of the Consent Order, the Commission had already proposed regulations to add just such a requirement for the content of consent orders, mirroring the pre-existing requirement for consent-order stipulations.  77 Fed. Reg. 41,120, 41,123, 41,128–29 (July 12, 2012).  On April 19, 2013, two weeks after the Consent Order in this case was issued, the Commission adopted its regulatory proposal, making it effective May 20, 2013. The adopted language, now in 19 C.F.R. § 210.21(c)(4)(x), requires a Consent Order to state that if a patent claim "is held invalid," "the Consent Order shall become null and void as to such invalid . . . claim."  *See* 78 Fed. Reg. 23,474, 23,477, 23,483 (Apr. 19, 2013).  This effectively puts the pre-existing requirement for a consent order stipulation into a new list of requirements for the associated consent order.  And the new regulation (like the proposal) says: "The Commission will not enforce consent order terms beyond those provided for in this section."  19 C.F.R. § 210.21(c)(5); 77 Fed. Reg. at 41,129 (proposed rule).

I am not prepared to draw conclusions at this point about the significance of this regulatory background. Perhaps the regulatory amendments adopted on April 19, 2013 (to take effect one month later) should be read to confirm, by making express, a pre-existing understanding that the requirements for a consent-order stipulation effectively controlled the consent order itself.  Perhaps for that reason the Consent Order here should or must be read to go no further than the pre-May 2013 prescription for consent-order stipulations.  I would benefit from the Commission's analysis of such matters.  And the public might benefit if, in the course of considering them, the Commission decided to clarify its regulations to avoid recurrence of the problem presented here.

The statutory provisions under which the Consent Order was issued and is being enforced, 19 U.S.C. § 1337(f), may also be significant here. In *San Huan New Materials High Tech, Inc. v. International Trade Commission*, 161 F.3d 1347 (Fed. Cir. 1998), this court affirmed the Commission's ruling that a consent order was to be enforced like an involuntary order, through penalties under § 1337(f)(2). But § 1337(f)(2) may be confined within the limits stated in § 1337(f)(1), which, by its language, may reach no further than conduct that constitutes a violation of § 1337(a), which, in turn, for a patent-based proceeding like this one, requires that the respondent "infringe a *valid*" patent, § 1337(a)(1)(B)(i) (emphasis added). In that way or others, the statute governing this matter may limit how the Consent Order can be enforced once there is a final judgment of invalidity. I would benefit from more focused development of this issue than we have had, especially because the issue might be one on which the Commission will ultimately be owed deference.

Finally, it seems relevant to consider how the penalty order for violating the Consent Order compares to contempt orders issued by federal courts for violating orders (even consensual orders) against patent infringement and, specifically, how such contempt orders are treated once the patent is adjudicated (always to have been) invalid. How contempt orders are treated depends on the finality of the underlying infringement-barring order and the character of the contempt—in particular, whether the contempt is criminal or civil. *See ePlus, Inc. v. Lawson Software, Inc.*, 789 F.3d 1349, 1356–58, *reh'g denied*, 790 F.3d 1307 (Fed. Cir. 2015). If we ask the question whether the Commission's civil penalty here is more like civil or criminal contempt in the federal courts, we find at least some reason to view it as more like criminal contempt, because there is nothing either compensatory or specifically coercive (pay until you comply) about it. But even as

to that, I would benefit from the Commission's own full consideration of its statutory and regulatory regime.

For the foregoing reasons, I would not affirm the penalty order before us, but remand for the Commission to consider the effect of the invalidation of the underlying patent claims.